Morning. Our first case today is number 23-2870, United States against Torey White. Mr. Marchioli. Thank you, Your Honor. May it please the court, Carlo Marchioli on behalf of the United States. May I please reserve three minutes for rebuttal? Great. Thank you, Your Honor. The defense in this case made a rational and strategic decision. Having learned about the district judge's two brief conversations with two jurors and having had hours to consider what they wanted to do about it, if anything, the defense decided to allow the jury to go forward with the liberations and proceed to verdict. They opted with that choice as opposed to requesting a mistrial. And from the defense's perspective, opting not to request a mistrial made sense. And you said it was a waiver. That's correct, Your Honor. And you argued waiver in the district court. That's correct. You think it's a waiver now? That's correct. You never argued in the district court it was a forfeiture? We did argue in the district court that it was a forfeiture. Where? We argued that, first we argued that it was a waiver. And then we also argued that it was an unpreserved error. And the Supreme Court has equated – Where did you argue forfeiture? Where did you say it was a forfeiture? We used the word waiver. Where did you use the word forfeiture? We never used the term forfeiture – Do you admit it's a peculiar way to argue forfeiture without mentioning the word? I think that's completely fair, Your Honor. But we did refer to unpreserved errors, and the Supreme Court has referred to forfeited arguments as unpreserved arguments. We also said that at a minimum, the defense would have to satisfy plain error review. We ticked through the four plain error factors, and plain error review only applies to forfeited where this Court made a point of saying that this Court's cases, as well as Supreme Court cases, recent cases, frequently uses the term waiver to include the term forfeiture. So I think a fair reading of our district court briefing is that we argued waiver in the first instance, and then forfeiture as an alternative argument because, again, we made clear that at a minimum, Mr. White would have to satisfy the plain error factors, and those factors would only apply to forfeited arguments. And the district court did address the fact that, in the district court's opinion, Mr. White did not waive or forfeit the claim that he was making, which I think reflects that in the district court's view, we did also argue forfeiture. Can you home in on what the district court said about forfeiture? The district court said that in the district judge's view, Mr. White did not waive or forfeit the claim that he was making. Can you provide a cite for that? I don't have the cite at the tip of my tongue, Your Honor, but the district court's analysis was relatively brief. The district court just said that because Mr. White did not have the opportunity to address the contacts that had occurred with the jurors prior to those contacts happening, he did not waive or forfeit his claim. That being said, as we've made clear, the district court did not address the key question, which is whether Mr. White requested a mistrial. And it's obvious from the record that there was no mistrial request. That's an on-off switch. It's either clear that Mr. White requested a mistrial, or it's clear that he did not request a mistrial. And the record makes plain that he did not request a mistrial. Why would he need to request a mistrial when the court told him that he could wait until after the verdict came, and that would preserve the issue for appellate review? So in the court's discussion of that option, Your Honor, the court was referring to the district judge's determination that there was no misconduct committed by the jury. And Mr. White even acknowledged that in his post-trial briefing. At appendix pages 3223 and 3254, Mr. White's post-trial briefing indicated that when the court brought the parties back in for a second time and discussed the three options, including the potential option of doing nothing and proceeding to verdict and then preserving for appeal the argument that the district court erred in some way about returning the jury to deliberations, the judge was referring to the judge's determination that there was no misconduct. Well, he said he would preserve appellate review. I'm not finding it right now. Something about whether I erred in conducting that fact-finding mission and letting the jury continue deliberations. And in any event, even if those words were unclear, the district court in its opinion granting a new trial clarified that that was its understanding, that it was telling the defense that it had a preserved issue and it could create a record later. So why should we undermine that finding by the judge who was present for these events? Because I think at a minimum, as you just said, Judge Freeman, those comments could only be read as preserving the possibility of creating a record later on. There was not any suggestion that Mr. White had preserved the claim to make a new trial request because it would have made no sense to continue on with the verdict at that point because any verdict against Mr. White would be subject to a new trial. And so the guilty verdict, just as occurred here, would have no force. And if there were any not guilty verdicts, those would be the verdicts that would actually have force against Mr. White. So, you know, one of the interesting things is the district judge gave three options to the parties. And we seem to be fighting about a fourth option, which would be to have moved for mistrial. And so he didn't say that. He didn't put that on the table. And so what's a party's obligation when a district judge says, hey, there's three things we can do? You know, this is what I'm willing to do. Does a party have to say, no, actually, totally wrong, Judge. That's wrong. There's option four, too. And is that what's needed to preserve? But it seems that the district judge kind of focused the parties, picked one, seems that they picked one, option one, and then they went down that road. But if the district judge mischaracterized the choices such that there's a fourth option, does that affect the waiver or the forfeiture analysis? Because at a minimum, waiver has to be a known relinquish, an intentional relinquishment of a known right. And the judge just told you three options, didn't tell you about the fourth. Well, it feels hard to say, gee, I intentionally waived a known right when the judge didn't even tell it to me. Well, I think the waiver occurs later on in the conversation when Mr. White's counsel says repeatedly that they are content to proceed with jury deliberations and a jury verdict. And we're not talking about some obscure procedural issue here. Mistrials, motions happen repeatedly. Then why didn't the district judge flag that? And there's option four, of course, as we all know. You know, if it's so obvious, why doesn't he say it? I think that gets back to my response to Judge Freeman earlier, Your Honor, which is when the district judge is discussing those three options, he's referring to the misconduct issue. I want to get to the second part of what you were saying, Judge Phipps, which is even if it's not waiver for some reason, at a minimum, it's forfeiture because it's clear on the face of this record that there was no request for a mistrial. This is not one of those issues that requires squinting at the record. My problem with that is that, you know, we review forfeiture decisions by district judges when that issue is joined and litigated in the district court. And we have some sort of reasoned disposition about whether, in fact, there was a forfeiture. And the record appears to me to be the opposite of that. What do we have to go on here? What you're reviewing is Judge Conner's analysis that in simply not being present prior to the contacts with the jury occurring, that Mr. White could not have waived or forfeited this claim. But the key reason we think it's abuse of discretion is because Judge Conner didn't address the second aspect of the issue, which is whether based on that alleged error, Mr. White didn't request the mistrial. But why wouldn't it have been an abuse of discretion consistent with what Judge Phipps was asking you about for the district court not to make clear the choice to Mr. White and his lawyers? You know, I mean, the judge, to his credit, admitted his mistake, right? Everyone agrees that this should not have happened, right? Ex parte conversations with the jury were clearly inappropriate. To his credit, he admitted his mistake. He tried to fix it. But wouldn't it have been appropriate for him to say, look, if you want to go forward and let this thing go to verdict, then you're not going to be able to raise the issue of my improper communication with the juror. It wouldn't have been that hard to say, right? I think if anything, that gets to the waiver question. But because even if we think in some way Judge Conner might have confused defense counsel by not expressly saying, hey, you could also move for a mistrial at this point, even if we think there was some confusion there, at a minimum, there's forfeiture because Mr. White at the end of the day did not request a mistrial. Well, the judge didn't tee up the forfeiture issue. It was the issue that was teed up was waiver, not forfeiture. And there's an important distinction between the two. You'd agree, right?  So how can we reverse the district court on the issue that wasn't teed up? And that the government didn't say, look, Judge, you've asked us to brief waiver, but we're also going to brief forfeiture. I would return to our district court briefing on the new trial motion. We did brief the plain error factors, and those factors would only apply if there had been forfeiture. And the district judge recognized that forfeiture was an issue, but again, just determined that because Mr. White didn't have the opportunity to object to the context before they happened, there could have been no forfeiture. You know, the trick with this is the district judge says, hey, you know, you can take this issue to the Third Circuit. That's not verbatim what he says, but that's really close to what he said, something like this. And so when a district judge kind of gives you the pass to go to the next level, and your counsel, do you sit there and say, you know what, boy, there's still more I need to do. I still better make some formal objections. The judge just said, take it up to the Third Circuit. This issue, yes, it's preserved. Take it to the Third Circuit. And then your counsel, do you sit there and say, well, Judge, you know, I want to lodge like five more formal objections. I want to do everything else. Like, what exactly was Judge Conner saying was preserved? He was saying the claim about whether he abused his discretion in determining that there was no misconduct on the part of the jury was preserved at that point. That if they wanted to seek a new trial or appeal based on their belief that there was actually misconduct that occurred by the jury, they could raise that claim with this court, but they would be stuck with the record that had been created at that point. Alternatively, they could ask for an additional record, which is actually what they did in choosing option one, which is, Judge, we'd like you to provide some additional information about what occurred. Or they could bring the jurors back in, the two jurors that were the subject of the communications, and they could go through some colloquy with those jurors about what actually happened. But that was all related to whether some juror had committed misconduct. That's what the defense recognized in their post-trial briefing. And Judge Phipps, getting back, I assume my time's expired, but Judge Phipps, just getting back to what you said earlier about whether counsel needs to come up with additional options, I think that does happen from time to time. So in the Riley case that we cited in our briefs, there was an inappropriate comment by the prosecutor during closing argument. Defense counsel objected, and I believe the district court gave a curative instruction. So that's some step by the district court to try to address the problem, similar to what Judge Conner did here. But this court held that it was forfeiture for the defendant not to make the additional request that a mistrial was needed. From my reading of Riley, there was no discussion on the record in district court about whether the defense should request a mistrial or was considering requesting a mistrial. But Riley held the failure to request the mistrial constituted forfeiture, and that required consideration of the plain error factors, which is what we argued in district court. Are there no additional questions? I have a question about what happens if you lose this appeal. Can you retry the whole case? We can retry at least part of the case. Eight counts there were acquittals, so we would not be able to proceed. Concede that's double jeopardy? We do. We do. And frankly, what we're concerned about, I don't think this is a secret, that even though we can proceed on the three counts for which there were guilty verdicts, there is going to be intense litigation over what evidence we can present at the new trial because the jury acquitted on conspiracy counts. We had evidence of co-conspirator statements. I'm sure there will be motions trying to exclude those statements. There might also be a motion to knock out counts 9 and 10, which were for the murders of Philip Jackson and Brandon Cole, because we proceeded solely on Pinkerton liability. And again, we no longer have the conspiracy counts. Now, we're certainly going to contest those motions as they arise. But that's the future litigation that we're anticipating. And as the court's probably aware, this case, if it goes back, is probably not going to go back to Judge Conner. He's set to retire. So a new district judge will probably be considering many of these evidentiary issues anew. And this is all relevant, I think, because it really gets to the fourth prong of plain error review, which is whether the public reputation and fairness of the judicial proceedings are called into question. And you don't have any hesitation about the public reputation of proceedings being called into question when the judge who made the mistake himself conceded his mistake, decided that Mr. White had to prevail in the final analysis? Isn't there some degree of deference owed to all that by this court? Absolutely. And if we're talking about the fourth prong of plain error review, frankly, I think Judge Conner's concession that he made an error, and even in real time, his very quick attempts to try to address the parties, see what the parties wanted to do. And just to go back briefly to the three options, Judge Conner made clear toward the end of that conference that defense, you are free to make whatever appellate record you would like. That's on them. And that's the whole point of issue and argument preservation. It's on the parties, not the district judge, to predict what arguments and issues to raise. This court said that in Daldao last year. It said it in cases like James as well. But what we do think Judge Conner got wrong was his failure to analyze Mr. White's failure to make a mistrial motion. And the Supreme Court has made clear in cases like Rosales-Morales that when you're talking about granting a new trial for an unpreserved claim, the public interests weigh heavily against a new trial request in that circumstance. Thank you. Mr. Engel? Good morning, and may it please the court. My name is Matthew Engel. With me at the council table are Bernadette Donovan and Donald Martino. We are here on behalf of Mr. White. Thank you for your time this morning. I think the court understands that the only issue before you in this appeal is the question of preservation. The government has not challenged the merits of Judge Conner's decision at all. And what I would like to start with is when we were in the courtroom during that second conference that Judge Conner called when he convened us, by the end of that second conference, it was crystal clear to everyone in the courtroom that we were all on the same page, that Mr. White objected to what had happened. He was not okay with what had happened. He asserted his right to be present and to be represented during any communications with deliberating jurors, and that he had preserved the option of litigating that and pursuing that claim post-trial. That's not my opinion. It's not a question of Mr. Marchioli's, Mr. Marchioli, excuse me, his opinion. That is Judge Conner's factual determination. And the factual determination that he made, and this is on page 17 of the appendix, is that all involved, including counsel for the government, understood proceeding in this way would not inhibit White's ability to revisit the issue post-trial. That is a factual determination that Judge Conner made based upon his own firsthand participation in the hearing and the observations and arguments of counsel. His conclusion from his order is that it was, quote, perfectly clear. White neither waived nor forfeited the juror communications issue. That's from page 16 of the appendix. Right. So let's look at that for a minute, because if we assume that the government did not argue forfeiture, Mr. Marchioli conceded that that word wasn't uttered, but the judge ruled on it. Does that resurrect the issue under our precedence? I don't believe so, and here's why, Your Honor. It's not just that they didn't use the word forfeiture. Right? That's true. They didn't use the word forfeiture anyway. The party that used the word forfeiture was us when we pointed out in our reply brief that we had been limited to the issue of waiver, and that they appeared to misunderstand the law of waiver because they were arguing plain error. Plain error doesn't apply to waived claims. So we pointed out in a footnote of our reply brief that there was no forfeiture that had been asserted, and we asked for the opportunity to brief forfeiture and plain error if the court intended to reach those issues. And you weren't allowed that opportunity. We were never given that opportunity. We were never given the opportunity to brief either of those issues before the district court. And what Judge Conner said, and I think he's right, is it doesn't really matter. It doesn't really matter if they preserved it or not because it is perfectly clear, the quote I just read, it's perfectly clear that White neither waived nor forfeited. We had preserved this claim. You know, as I tease this out, it strikes me that the judge is kind of giving your client like an option contract. Like normally you don't get the option of, hey, you know, wait, let's see what the jury does. You know, you could either move for mistrial right now or I'll treat like now is then. You can see if the verdict comes your way, and if you don't like the verdict, then you get to come back in time and you get to act like you could do it right now. That's pretty irregular, right? I mean, you don't usually get to say, looks like there's a huge error, possibly. You know, you might think there is. If you think there's a huge error, hold off. Let's see if the jury goes your way. And if they don't go your way, then let's talk about the huge error instead of addressing it right now. That's an awkward pose. I don't see too many appellate records where a district judge give option contracts to criminal defendants mid-trial like that. What do you think? I will agree with you that this is an unusual record in many, many ways. I'm with you there 100%. But the issue here is we didn't hold off. We didn't hold off on anything. You didn't move for mistrial. You take option one. You hear stuff on option one. It seems that you have the option to say, you know what, look, we don't want two or three because we don't want to mess with the deliberations. But maybe it's too late for that anyway. Maybe we just want to move for mistrial right now. You had ex parte. You didn't tell us. It was only 13 minutes ago. So, you know, it's probably fresh in your head, but you didn't tell us and you didn't record it. And, you know, we've got a person here facing really, really stiff penalties for really serious crimes. We aren't taking any chances. We're moving for mistrial right now. Like you could have done that, right? We could have done that, no question. But we were not required to do that. And the government has cited not a single case. I've read all the cases they cited in their brief. They have cited none that say in order to preserve a Rule 33 motion, you must move for a mistrial. All of the cases that they've cited, including the Riley case that counsel just argued, say when a motion for new trial or mistrial is never brought to the district court full stop, then the appellate court reviews for plain error. I don't contest that. Of course it does. But we did present this issue timely to the district court. We did everything that we were required to do. We objected. We clearly did not. Why was it an error, though, for the district court to give you this optionality? I mean, it just seems wrong to give you two bites at the apple in a criminal case. I mean, I think that the issue that was on everybody's mind, certainly was on my mind, I believe it was on Judge Conner's mind, I believe it was on the government's mind, is that pulling the jury out right now can only do more harm. We were trying to mitigate the damage that had been done. I don't know. It's easy to Monday morning quarterback this, but it seems to me clear that what the court should have done was said the following. Look, I don't know why I did this, but I made a mistake. I talked to the jurors. Here's what happened. Let's make a record. What do you want to do? Do you want to go forward at your peril, knowing what you know about what I talked to the jurors about, or do you want to do this whole thing over again? That's what should have happened. I'm not sure that that's what should have happened, Your Honor.  Because I think that Judge Conner's view was, as I said, we risk creating further prejudice. You know, he had observed tensions running high amongst the jurors. He wrote about that. He talked about that. He was concerned that disrupting their deliberations could cause further prejudice, and everybody wanted to avoid that. All right, but then you could have, if everyone wanted to avoid that, you could have said, Judge, thank you. We appreciate your disclosure. We're prepared to go forward at our peril, both sides, at their collective peril, right? And then you proceed to verdict as if the judge's communications with the jurors never happened. And then either side, win or lose, lives with the result. Instead, you got an option to see if you got a good result. And if you get a good result, then no problem. And if you get a bad result, you get to do it all over again. Now, the government's in an even worse position because you got a partially good result, and it's going to be quite difficult for the government to get a fair trial on the counts that are going to be retried in light of the evidentiary issues. Isn't that true? So we're in a very hypothetical world here because none of these things actually happened. But what I will say, Your Honor, is that we weren't guaranteed a new trial. All we were guaranteed at the end of that conference was that the issue had been preserved. So this idea that we were just going to roll the dice. What issue had been preserved? That the issue of the judge's ex parte and off-the-record communications with the jurors had been preserved. That's what we knew. What does that mean? I mean, everyone knows that's improper. But what matters is what's the effect of that impropriety. That's right. And what was your view then and what's your view now of the effect of the impropriety? My view is Judge Conner's view, which is that it created a structural error and that it clearly was not harmless given the factors that he identified. All right. And if it was structural error, that structural error occurred when it occurred. Correct. Not after you got a mixed verdict. Correct. So the mixed verdict never should have issued. And now the whole situation is a mess because of the mixed verdict. In some ways, if it weren't a mixed verdict, it would be cleaner, right? If it had been guilty on all counts and Judge Conner's correct, then you get a second shot and you get to retry the whole case. And if it had been, well, I guess either way, you either get to have the good verdict or you get to redo the bad verdict. Yeah. But now you've got the mixed verdict and I don't know how you uncrack the egg. And I think in all candor, what happened here, Judge, is that the government felt very strongly, very confident that they were going to get a verdict and none of this was going to matter at the end of the day. And they took their chances. What we haven't talked about here yet today is that it's not just the fact that Judge Conner specifically stated on the record that it was he had erred and that we had the option, the issue was preserved for post-trial litigation. The government affirmatively agreed with that. The government, after the court confessed its error and said that we could do nothing and preserve the issue for appellate review, said, I agree with the court's position. And what the court had just finished saying was that it had committed error in having these communications. So just to tease out, like, agreement, we've got mirror image rule. You've got to agree to what the offer is in order for it to have any force. And so I'm just trying to track because it seems that there's two things going on. One is, are you keeping this live for the Rule 33 motion?  Two, forget the Rule 33 motion. Are you keeping what happened today live for issues on appeal? And so it strikes me as a little bit different if the government says, hey, we're fine. This record right here today, go live on appeal with whatever you want, is different than saying, hey, go live with a Rule 33 motion later. Do you think there's a difference there? And if so, what do you think the legal significance is of agreeing to one, not the other? I think there might be a difference there. But I think that what the government said is, and I'm quoting, if there is a verdict and it is against the defendant, then there would be a reason to create a record and maybe do something at that point with speaking to any of the jurors to see if any of that conduct affected their deliberations. That's a Rule 33 motion. That's not appellate review before this court. That's, yeah, if there's a verdict and it's against Mr. White, then there will be a need to create a record. That can only happen in the context of a Rule 33 motion. And that's exactly what we did. We took the government at its word. And Judge Conner's findings about that, and that's why Judge Conner wrote the sentence I opened with, which is that everyone in the courtroom understood that the issue could be preserved, revisited post-trial. That's why he said that. And the only question before this court now is, was that finding an abuse of Judge Conner's discretion? And the words that this court has used to describe that review are, were his findings arbitrary, fanciful, or unreasonable? I mean, Mr. Marchioli is arguing quite a bit about, you know, what these words meant and whether it applied to Claim A or Claim B. But we don't have to take Mr. Marchioli's interpretation of those words because Judge Conner, an experienced, thoughtful, frankly, pretty challenging from a defense perspective judge, wrote a thoughtful, reasoned, 28-page opinion in which he explained exactly what his understanding was at the time and what he meant by you can preserve this issue for appellate review. And he was talking about his ex parte and off-the-record communications with deliberating jurors. That's in his order. That's what is subject to the highest degree of deference in the appellate courts because it was based on his firsthand understandings and his interactions with counsel in the courtroom. There are a couple purposes for a couple reasons we require preservation. One of them is to protect litigants from unfair surprise. There is simply no way on this record that the United States can plausibly claim that it was caught off guard, that it was surprised when we raised this issue in the Rule 33 motion following verdict. Based on the colloquy that had taken place and the concessions that the government made, there's no unfair surprise here. There's nothing that they were prevented from arguing. There's no prejudice to them from what happened here other than Judge Hardiman. I would grant that they're in a more challenging position because of the verdicts that came down, but that's the way the cookie crumbles. They put their case on, and that's what the jury decided. Mr. White was not guilty of any conspiracy charge. Sorry. Yeah, it's going to be hard to retry him. It should be hard to retry him. That's okay. Do you think the government should have moved for a mistrial? They certainly have that option. I'm not saying they should or shouldn't have, but they certainly have that option. But your response to this mixed verdict and the trouble that Mr. Marchioli outlined is that if they wanted to avoid this potentiality, they too could have asked the judge to pull the plug before the verdict was rendered. Absolutely, and instead they did precisely the opposite. They stood up in court and said, if there is a verdict, if there is a verdict, and it is against Mr. White, then there would be a need to create a record, and that's exactly what happened. There was a verdict. At least partially it was against Mr. White. It didn't make much sense. It couldn't be reconciled with the instructions or the law or the government's theory, but there was a verdict against Mr. White. We went on and attempted to create a record. Ultimately, Judge Conner found we did not need to create more record because he had everything he needed to grant relief and this court should affirm. Unless there are further questions, Your Honor. Okay, thank you very much, Mr. Engel. We'll hear Mr. Marchioli's rebuttal. Thank you, Your Honor. I'll pick up where Mr. Engel left off with respect to the prosecutor's comments. The prosecutor, again, was referring to the misconduct issue and the need to potentially create a record on that issue, so saying that there might need to be a need to create a record is not agreeing to a new trial. There was no mention of a new trial in anything that the prosecutor said. Stepping back for a moment, away from the prosecutor's comments and away from the three options that Judge Conner provided, I want to focus the court's attention for a moment on what initially happened here. So Judge Conner brings the parties in for the first conference, explains what happened, everybody leaves, and then about two and a half hours pass at that point. And I haven't heard through any of the briefing or here today any dispute with the notion that the defense strategically and deliberately chose not to request a mistrial because even before you get to the second conference where those three options are discussed and the prosecutor makes his statement. That's true, but why doesn't that fall into the category of good lawyering? And if you had a concern about that, you could have asked the judge to pull the plug. Not you, but your colleague. I think it was good lawyering, but then they're stuck with that choice. That's our entire point. Right, but what we're wrestling with is the ramifications of that choice. And Rule 33, I mean, its very language contemplates a motion after judgment. That's correct. So don't we have to take the text of Rule 33 seriously? How could we say that they had to make their Rule 33 motion before judgment when it specifically contemplates vacating a judgment already rendered? Because Rule 52 also applies, and that provides the plain error standard. And the plain error standard also applies to post-trial litigation. This court said that in Tiller in an opinion by Justice Alito. Additionally, I would direct the court to write in Miller, Section 851 makes the same point. It doesn't arise frequently, but if a claim is not preserved during the trial, then in litigating a new trial motion and in ruling on a new trial motion, the district court is supposed to apply plain error review. That's our point. And when you look at cases like Riley and Richardson, Friedman out of the Second Circuit makes this point expressly clear that if you don't recognize the need for defense counsel to make a mistrial motion at the time the alleged error occurred, there's going to be no incentive whatsoever for defense counsel to make a mistrial motion. But it strikes me that there's something more in play, right? Like let's say all that's true, but then if the prosecutor says, you know what, we're fine, we're fine. As far as we're concerned, you don't want to bring it up now, bring it up at the end of trial. We're fine if you bring it up in Rule 33. Well, at one level the prosecutor is signaling, I'm waiving the argument that your later Rule 33 motion should have been preserved earlier. And so if the government lays down and says, we aren't going to challenge you for bringing this later, and then it's brought later, it feels weird to resurrect and say, no, now we want to challenge you. You should have disregarded what I said. What I told you right then, you shouldn't have taken that at face value. You should have said, thank you, I don't trust you, and I'm going to still move for a mistrial right now. I think when the government says that, counsel can say, okay, you want to keep this issue open? You've got your reasons for doing this. Probably a good strategic call if you're a prosecutor to keep that issue open. But you can't then say, oh, yeah, the door was shut, because I told you you could have brought a later motion. So two responses to that. I think the government would have potentially confronted some rough waters had they moved for a mistrial then. The government obviously has to be concerned about potential double jeopardy issues. So if the government is going to bring the mistrial motion. But it's more that the government told defense counsel you can bring it later, not whether they moved or not. That's my second response. I don't think a fair reading of the government statement supports the contention that they were telling defense counsel you can make a mistrial motion or a new trial motion later on. Again. At the very least, it was vague. At the very least, it was vague. The judge who created the vagary said, tie goes to them. I think then you get to forfeiture. Even if you think it's vague, it's black and white. There was no request for a mistrial. Judge Conner, just like he might have done. It just seems so hard to say that when the judge made a vague statement or a general statement that you could come back and make a record later, that that's inimical to seeking a new trial. You're asking us to infuse a lot into that general comment, aren't you? I don't think so because my reading of it is the same way that defense counsel read it in their opening briefing for a new trial and to interview jurors in district court. They said that at that point in time when these three options were being discussed, Judge Conner was referring to the misconduct issue and whether he created a sufficient record on the misconduct issue. It was then after Judge Conner laid out exactly what occurred at the defense's request, after the prosecutor made that statement, that everyone pivoted, and pivoted is the word that defense counsel even used in this appeal. They pivoted after all that happened to the issue of whether the judge erred in having the ex parte contacts with the jurors. I understand it's an abuse of discretion standard, but I think Judge Conner in his opinion in ruling on waiver and forfeiture made the same error that he might have made at the time that these conferences were occurring, which is he believed that Mr. White had two options, bring the two jurors back out for some additional questioning or allow the jury to proceed to verdict. He did not address the key issue here, which is whether Mr. White could have moved for a mistrial. He could have clearly done so. They had hours to think about it. We typically require defense attorneys to stand up immediately when there's a reason to object and to object, make a claim for any type of corrective action they want, like a corrective jury instruction or something along those lines. Here they had hours, and even before they got to the second conference, we know that defense counsel had been thinking about this issue. They had prepared a written motion to ask the judge to make sure that they're present for any additional questioning of the jurors. Not once, even before we get to the judge's discussion of three options, was there any mention of a mistrial. And for that reason, we're asking the court to reverse. All right. Thank you very much, Mr. Marchioli. Thank you, Mr. Engel. The court will take the matter under advisement. Thank you.